# Illinois Official Reports

## Appellate Court

---

### *Guns Save Life, Inc. v. Ali*, 2020 IL App (1st) 181846

---

| | |
|---|---|
| Appellate Court Caption | GUNS SAVE LIFE, INC.; DPE SERVICES, INC., d/b/a Maxon Shooter's Supplies and Indoor Range; and MARILYN SMOLENSKI, Plaintiffs-Appellants, v. ZAHRA ALI, in Her Official Capacity as Director of the Department of Revenue of Cook County; THOMAS J. DART, in His Official Capacity as Cook County Sheriff; and THE COUNTY OF COOK, a County in the State of Illinois, Defendants-Appellees. |
| District & No. | First District, Fifth Division<br>No. 1-18-1846 |
| Filed | March 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-18217; the Hon. David Atkins, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. |
| Counsel on Appeal | Christian D. Ambler, of Stone & Johnson, Chtrd., of Chicago, and David H. Thompson, Peter A. Patterson, and John D. Ohlendorf, of Cooper & Kirk, PLLC, of Washington, D.C., for appellants.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Cathy McNeil Stein, Cristin Duffy, and Paul A. Castiglione, Assistant State's Attorneys, of counsel), for appellees. |

Panel                          JUSTICE HALL delivered the judgment of the court, with opinion.
                               Justices Rochford and Delort concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiffs Guns Save Life, Inc. (GSL); DPE Services, Inc., d/b/a Maxon Shooter's Supplies and Indoor Range (Maxon); and Marilyn Smolenski (Smolenski) appeal the circuit court's grant of summary judgment in favor of defendants, Zahra Ali (Ali), Thomas J. Dart (Dart), and the County of Cook (County)[1] on their second amended complaint for declaratory judgment and injunctive relief. Plaintiffs sought to challenge the County's ordinance that imposed a tax on firearm sales and two types of ammunition sales (centerfire and rimfire) within the County.

¶ 2    Plaintiffs have raised the following issues on appeal: (1) whether the circuit court erred in partially granting defendants' section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2016)) motion to dismiss because plaintiffs Maxon and Smolenski did not have standing to bring suit to challenge the firearms tax; and (2) whether the circuit court erred in granting summary judgment in favor of defendants on the remaining claims, namely (a) whether the challenged firearms tax and ammunition tax violate the second amendment to the United States Constitution (U.S. Const., amend. II) and section 22 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 22), (b) whether the classifications in the ammunition tax violate the uniformity clause in section 2 of article IX of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2), and (c) whether the challenged firearms tax and ammunition tax are preempted by the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/1 *et seq.* (West 2016)) and the Firearm Concealed Carry Act (Concealed Carry Act) (430 ILCS 66/1 *et seq.* (West 2016)).

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

¶ 5    Plaintiffs filed their initial four-count complaint for declaratory judgment and injunctive relief, challenging the firearms and ammunition taxes on December 17, 2015, alleging that defendants (1) violated the second amendment (U.S. Const., amend. II) and section 22 of article I of the Illinois Constitution (Ill. Const. 1970, art. I, § 22), (2) violated the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2), and (3) were preempted by section 13.1(b) of the FOID Card Act (430 ILCS 65/13.1(b) (West 2016)) and section 90 of the Concealed Carry Act (430 ILCS 66/90 (West 2016)) as it applies to handguns and handgun ammunition.

¶ 6    Defendants moved to dismiss the complaint on January 29, 2016, alleging that plaintiffs lacked standing and that the complaint failed to state any claim on which relief could be granted.

---

[1]Zahra Ali is the Director of the Cook County Department of Revenue, and Thomas J. Dart is the Sheriff of Cook County. They were named as defendants in their official capacities.

¶ 7 Plaintiffs filed their first amended complaint on February 22, 2016, and a response to defendants' motion to dismiss on April 6, 2016 (pursuant to the circuit court's March 16, 2016, order).

¶ 8 According to the second amended complaint, on November 9, 2012, the County's Board of Commissioners (Board) passed a tax titled the Cook County Firearm Tax Ordinance (firearms tax), which imposed a $25 fee for each firearm purchased by a citizen at a firearms retail business located in the County. Cook County Code of Ordinances art. XX, §§ 74-665 through 74-675 (adopted Nov. 9, 2012) (County Code). The revenue from this tax was not directed to any specific fund. On November 18, 2015, the Board amended the County Code to impose a tax on the retail purchase of firearm ammunition at the rate of $0.01 per cartridge of rimfire ammunition and $0.05 per cartridge of centerfire ammunition (ammunition tax). Cook County Code of Ordinances art. XX, § 74-668 (adopted Nov. 18, 2015). The revenue from the ammunition tax was directed to the Public Safety Fund to fund operations related to public safety.

¶ 9 Plaintiffs alleged that GSL was a nonprofit corporation dedicated to protecting the second amendment rights of Illinois citizens to defend themselves. Some GSL members reside in the County and have paid both the firearm and ammunition taxes. GSL alleged, however, that its members purchased firearms and ammunition less frequently in the County because of the taxes and that some members avoid purchasing firearms and ammunition in the County because of the taxes.

¶ 10 Plaintiffs alleged that Maxon was a registered retailer of firearms and ammunition in the County. It operates a retail gun shop and indoor shooting range in Des Plaines, Illinois. Maxon sells rifles and handguns and their corresponding ammunition, including centerfire and rimfire. Maxon is owned and operated by DPE Services, Inc.

¶ 11 Plaintiffs alleged that Smolenski was a resident of the County and member of GSL who possessed a valid FOID card and a valid concealed carry license. Smolenski "frequently" engaged in firearms transactions and decided not to purchase a firearm in the County because of the tax. Specifically, on June 7, 2016, Smolenski bought 100 rounds of 9mm (centerfire) ammunition from Maxon and paid the $5 ammunition tax under protest. On June 8, 2016, her counsel submitted her protest of payment to the Department of Revenue of Cook County (Department of Revenue). While Smolenski intends to continue purchasing ammunition in the County, the second amended complaint alleged that she did not intend to purchase as much as she otherwise would have. Further, Smolenski did not purchase a new firearm at Maxon because of the firearms tax.

¶ 12 On October 17, 2016, the circuit court issued a memorandum opinion and order granting in part and denying in part defendants' motion to dismiss. The order dismissed Smolenski's and Maxon's challenges to the firearms tax for lack of standing. The court found that Smolenski had no standing to challenge the firearms tax because she had not paid the tax and thus had not been injured by the tax. The court found that Maxon had no standing to challenge the firearms tax on behalf of its customers because there was no ban on the sale of the items at issue, nor was this a situation where the retailer passed a tax on to its customers. Rather, the tax was borne by the customers. The circuit court found that GSL had associational standing to challenge both taxes because it alleged that its members paid both taxes; Smolenski had standing to challenge the ammunition tax because she paid it under protest; and Maxon had standing to challenge the ammunition tax because the second amended complaint pleaded facts

alleging that compliance with the reporting requirements associated with the ammunition tax would cost it thousands of dollars per year, which gave Maxon a real interest in challenging the ammunition tax.

¶ 13 The circuit court denied defendants' motion to dismiss for failure to state any claim on which relief could be granted because (1) plaintiffs were not seeking a refund of taxes paid such as to implicate the voluntary payment doctrine and (2) whether the taxes were valid as a matter of law was the ultimate issue in the litigation and determination of those issues on a motion to dismiss would be premature.

¶ 14 The parties subsequently filed cross-motions for summary judgment on the remaining claims.

¶ 15 On August 17, 2018, the circuit court denied plaintiffs' motion and granted summary judgment in favor of defendants. In its memorandum opinion and order, the court concluded that the taxes did not infringe on plaintiffs' federal and state constitutional rights to bear arms because they were proper exercises of the County's home rule taxing powers and did not, in any meaningful way, impede plaintiffs' ability to exercise their right to bear arms. The court found that plaintiffs had no evidence that the taxes would have the effect of preventing ownership or possession of firearms or that they affected the ability of law-abiding citizens to retain sufficient means of self-defense. The circuit court further found that even if the taxes burdened constitutionally protected conduct, they were substantially related to the important government interest of public safety because they provided funds to implement specific policies and programs designed to combat violence. Moreover, the taxes were outside the scope of preemption of the state laws because they were a valid exercise of the County's home rule power to tax. Finally, the court concluded that plaintiffs failed to carry their burden of demonstrating that the different rates of ammunition classification violated the uniformity clause.

¶ 16 This timely appeal followed, and oral argument was held on January 14, 2020.

¶ 17 ANALYSIS

¶ 18 Plaintiffs have raised the following issues on appeal: (1) whether the circuit court erred in partially granting defendants' section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2016)) motion to dismiss because plaintiffs Maxon and Smolenski did not have standing to bring suit to challenge the firearms tax and (2) whether the circuit court erred in granting summary judgment in favor of defendants on the remaining claims, namely (a) whether the challenged firearms tax and ammunition tax violate the second amendment to the United States Constitution and section 22 of article I of the Illinois Constitution, (b) whether the classifications in the ammunition tax violate the uniformity clause in section 2 of article IX of the Illinois Constitution, and (c) whether the challenged firearms tax and ammunition tax are preempted by the FOID Card Act and the Concealed Carry Act.

¶ 19 A. Section 2-619(a)(9) Motion to Dismiss for Lack of Standing

¶ 20 Plaintiffs first contend that all three plaintiffs had standing to challenge both the firearms tax and the ammunition tax. They first contend that the circuit court correctly determined that GSL had standing to bring suit to challenge both taxes because an association may bring suit on behalf of its members. Plaintiffs further contend that Smolenski had standing to challenge

both taxes because she suffered distinct and palpable injuries as a result of both taxes, even though she has not yet paid the firearms tax. Additionally, plaintiffs contend that Maxon had standing to challenge both taxes as a vendor because it is injured by the fact that it must collect the taxes and remit them and because it is independently injured by the taxes in that they impose burdensome compliance costs and reduce Maxon's revenue. Thus, plaintiffs contend that the circuit court erred in determining that Smolenski and Maxon did not have standing to challenge the firearms tax and by granting defendants' section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2016)) motion on that basis.

¶ 21    Here, defendants challenged plaintiffs' standing through a motion for involuntary dismissal under section 2-619(a)(9). Lack of standing is an affirmative defense (*Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago*, 189 Ill. 2d 200, 206 (2000)), and a section 2-619(a)(9) motion is a proper avenue for asserting the affirmative defense of standing (*Crusius v. Illinois Gaming Board*, 348 Ill. App. 3d 44, 48 (2004)).

¶ 22    On appeal, defendants initially reasserted their argument that none of the plaintiffs have standing. However, at oral argument, defendants conceded that GSL had associational standing, but continued in their assertion that Maxon has no standing whatsoever and that Smolenski has no standing to challenge the firearms tax because she has not paid that tax. As to Maxon, defendants contend that it has no standing to contest the firearms tax because it has no real interest in the tax because it has no burden of paying it and further that there was no additional expense for Maxon to compute and report in compliance with the ammunition tax.

¶ 23    A motion to dismiss under section 2-619(a)(9) admits the legal sufficiency of the plaintiff's complaint but asserts that the claim against the defendant is barred by an affirmative matter that avoids the legal effect of the claim or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2016); *Kuykendall v. Schneidewind*, 2017 IL App (5th) 160013, ¶ 32. An "affirmative matter" is a type of defense that negates a cause of action completely or refutes critical conclusions of law or conclusions of material fact that are unsupported by specific factual allegations contained in or inferred from the complaint. *Kuykendall*, 2017 IL App (5th) 160013, ¶ 32. The "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or other evidentiary materials, and it must do more than refute a well-pleaded fact in the complaint. *Id.* Section 2-619(a)(9) does not authorize defendant to submit affidavits or evidentiary matters for the purpose of contesting the plaintiff's factual allegations and presenting its version of the facts. *Id.* The defendant has the initial burden of establishing that an affirmative matter defeats the plaintiff's claim, and if satisfied, the burden shifts to the plaintiff to demonstrate that the proffered affirmative matter is either unfounded or requires the resolution of a material fact. *Id.*

¶ 24    When ruling on a motion to dismiss under section 2-619(a)(9), the circuit court must accept as true all well-pleaded facts in the plaintiff's complaint and all reasonable inferences that may be drawn, and it must construe the pleadings and supporting documents in a light most favorable to the nonmoving party. *Id.* ¶ 33. The motion should be granted only if the plaintiff can prove no set of facts that would support his cause of action. *Id.* A motion to dismiss under section 2-619(a)(9) presents a question of law that is reviewed *de novo*. *Id.*

¶ 25    The doctrines of standing, mootness, ripeness, and justiciability are the methods by which courts preserve for consideration only those disputes that are truly adversarial and capable of resolution by judicial decision. *Martini v. Netsch*, 272 Ill. App. 3d 693, 695 (1995).

¶ 26    Under Illinois law, a plaintiff need not allege facts establishing standing. Rather, it is the defendant's burden to plead and prove lack of standing.

¶ 27    The pivotal factor in determining whether a plaintiff has standing is whether the party is entitled to have the court decide the merits of the dispute or particular issue. *Id.* Thus, the court must decide if the party asserting standing will benefit from the relief sought. *Id.*

¶ 28    In Illinois, to have standing to challenge the constitutionality of a statute, one must have sustained or be in immediate danger of sustaining a direct injury as a result of enforcement of the challenged statute. *Chicago Teachers Union, Local 1*, 189 Ill. 2d at 206. The claimed injury must be distinct and palpable, fairly traceable to defendant's actions, and substantially likely to be prevented or redressed by the grant of the requested relief. *Id.* Further, payment of a tax establishes standing to challenge the constitutionality of the statute under which the tax is imposed. *DeWoskin v. Loew's Chicago Cinema, Inc.*, 306 Ill. App. 3d 504, 513 (1999). Whether the plaintiff has standing to sue is to be determined from the allegations contained in the complaint. *Chicago Teachers Union, Local I*, 189 Ill. 2d at 206.

¶ 29                                    1. Smolenski's Standing

¶ 30    Plaintiffs contend that Smolenski also has standing to challenge the constitutionality of both taxes because she has suffered distinct and palpable injuries as a result of them. They allege that Smolenski frequently engages in firearms transactions and had sought to purchase a Glock 42 gun in Cook County but did not do so because of the firearm tax. Additionally, Smolenski alleges she has both (1) purchased ammunition in Cook County and paid the challenged ammunition tax under protest as part of her purchase and (2) will purchase ammunition in Cook County in the future in reduced amounts because of the ammunition tax. While the circuit court correctly determined that Smolenski had standing to challenge the ammunition tax, plaintiffs contend that the court incorrectly determined that she did not have standing to challenge the firearm tax because she had not yet paid it.

¶ 31    Defendants contend that the circuit court's ruling that Smolenski lacked standing to challenge the firearm tax was correct.

¶ 32    A court will consider a constitutional challenge to a statute by a party who is affected by the statute or aggrieved by its operation. *Terra-Nova Investments v. Rosewell*, 235 Ill. App. 3d 330, 337 (1992). A plaintiff that pays certain fees mandated by an act has standing to challenge the constitutionality of the fees paid. *Id.* (citing *Mlade v. Finley*, 112 Ill. App. 3d 914, 917 (1983)); *DeWoskin*, 306 Ill. App. 3d at 513.

¶ 33    Here, Smolenski has not paid the firearm tax and premises her claim of standing on a hypothetical firearm purchase in the future. We conclude that Smolenski has not satisfied the requirement for standing to challenge the firearm tax and that the circuit court properly found that she did not have such standing.

¶ 34                                    2. Maxon's Standing

¶ 35    Plaintiffs further contend that Maxon had standing to challenge both taxes at issue in this case, on behalf of its customers under the doctrine of vendor standing, and that it is injured by the taxes in multiple ways. First, plaintiffs contend that Maxon is injured because it must collect the taxes and remit them to the County. They also argue that Maxon's costs for complying with the firearm and ammunition taxes are substantial. Plaintiffs further contend

that Maxon has standing to challenge both taxes because they cause an adverse economic impact to Maxon's business.

¶ 36 Defendants contend that Maxon has no standing to challenge either tax. First, defendants assert that Maxon has no real interest in the firearm tax because the burden of paying the tax falls on its customers, not Maxon as a retailer. Similarly, defendants argue that Maxon has no standing to challenge the ammunition tax because Maxon did not incur any additional expense computing and reporting in compliance with the tax. Defendants note that in her deposition, Sarah Natalie, Maxon's general manager, testified that as a seller of firearms, Maxon is required to register with the Department of Revenue and keep books and records of sales. She further testified that Maxon owns a module program that automatically tracked sales data based on the type of firearm and ammunition sold, which provided efficient and cost-effective assistance to employees because it kept sales records, could generate reports of the store's inventory, and could provide the dates of purchases. The program could also generate a report of all firearms and ammunition sold in a one-month period and it automatically separated the type of ammunition based on four categories, two of which are included in the tax. Because Maxon suffered no concrete injury, defendants contend that its claim of standing to challenge the ammunition tax "collapses."

¶ 37 Here, the taxes in question are not paid by the retailer, Maxon, but are paid by the consumer. Maxon's only responsibility is to track the sales and remit the tax, similar to what it is already required to do as a retailer of firearms and ammunition. Maxon could in no way be considered the payer of the challenged taxes because it is the consumer alone who has that responsibility. See *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 26 (2004). Maxon's legal status is not altered by virtue of its reporting obligations under the taxes. *Id.* at 27. As such, the circuit court properly concluded that Maxon lacked standing to challenge the firearm tax.

¶ 38 However, we find that the circuit court erred in concluding that Maxon had standing to challenge the ammunition tax because of the adverse economic consequences. Maxon's general manager testified in her deposition that the retailer already had a system in place that could do the required reporting and that it was already required to track such sales and remit reports to the Department of Revenue. Thus, Maxon failed to establish any real injury by the ammunition tax's requirement that it collect and remit the tax to the Department of Revenue.

¶ 39 In conclusion, the circuit court properly determined that GSL had standing to challenge both taxes, that Smolenski had standing to challenge the ammunition tax, and that neither Smolenski nor Maxon had standing to challenge the firearm tax. The circuit court erred in finding that Maxon had standing to challenge the ammunition tax based on evidence in the record.

¶ 40                                                    B. Summary Judgment

¶ 41 Plaintiffs next contend that the circuit court erred in granting defendants' motion for summary judgment on all counts.

¶ 42 The purpose of summary judgment is not to try a question of fact, but rather to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). A motion for summary judgment should only be granted if the pleadings, depositions, and affidavits on file demonstrate that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *Barnard v. City of Chicago Heights*, 295 Ill. App. 3d 514, 519 (1998). In determining whether a genuine issue as to any material fact

exists, a reviewing court must view the evidence in the light most favorable to the nonmoving party. *Id.* at 519. A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, where reasonable persons might draw different inferences from the undisputed facts. *Hilgart v. 210 Mittel Drive Partnership*, 2012 IL App (2d) 110943, ¶ 19. On a summary judgment motion, once the moving party has demonstrated the right to judgment, the burden shifts to the nonmoving party to present evidence showing a genuine issue of material fact or that the moving party was not entitled to judgment as a matter of law. Mere argument is not enough to raise an issue of material fact. *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 16.

¶ 43 Because the parties filed cross-motions for summary judgment, they conceded that no material questions of fact existed and that only a question of law was involved that the court could decide on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Appellate review of the circuit court's decision as to cross-motions for summary judgment is *de novo*. *Id.* ¶ 30.

¶ 44 Plaintiffs make two arguments concerning the constitutionality of the firearm and ammunition taxes: (1) the taxes burden conduct protected by the federal and state constitutions and (2) if imposition of the taxes are understood as an exercise of the County's taxing power, as the circuit court concluded, they are unconstitutional under the federal and state constitutions.

¶ 45      1. Impermissible Burdening of Constitutionally Protected Rights

¶ 46 Plaintiffs first contend that the Cook County firearms and ammunition taxes burden conduct protected by the second amendment (U.S. Const., amend. II) and article I, section 22 of the Illinois Constitution (Ill. Const.1970, art. I, § 22), namely, the right to acquire firearms and ammunition by increasing the cost of both types of purchases. Plaintiffs maintain that the United States Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008), held that the second amendment protects an individual's right to keep and bear arms and that the central component of that right is individual self-defense. Further, plaintiffs contend that the Court's later decision in *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010), "confirmed" that the second amendment right is fundamental, that it is fully applicable to the states, and that courts have recognized that the right to possess firearms for protection implies the corresponding right to acquire arms and the ammunition they need to function. Accordingly, plaintiffs conclude that both taxes therefore directly burden the fundamental constitutional right of individuals to acquire firearms and ammunition for firearms. Plaintiffs are making a facial constitutional challenge to the tax ordinances at issue.

¶ 47 "A facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to raise successfully [citation], because an enactment is facially invalid only if no set of circumstances exist under which it would be valid." *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). The fact that the enactment could be found unconstitutional under some set of circumstances does not establish its facial invalidity. *Id.* at 306. Once standing is established, the plaintiff's personal situation becomes irrelevant. *Guns Save Life, Inc. v. Raoul*, 2019 IL App (4th) 190334, ¶ 44.

¶ 48 In construing the validity of a municipal ordinance, the same rules are applied as those that govern the construction of statutes. *Napleton*, 229 Il. 2d at 306. Like statutes, municipal ordinances are presumed constitutional. *City of Chicago v. Alexander*, 2015 IL App (1st)

122858-B, ¶ 18. Courts have a duty to construe legislative enactments so as to uphold their validity if reasonably possible. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 22. To overcome this presumption, the party challenging the constitutionality of a statute has the burden of clearly establishing that it violates the constitution. *Id.* The question of whether a municipal ordinance is unconstitutional is a question of law, subject to *de novo* review. *City of Chicago v. Taylor*, 332 Ill. App. 3d 583, 585 (2002).

¶ 49 Essentially, plaintiffs argue that because the right to keep and bear arms (and impliedly the right to acquire ammunition) is a constitutionally protected fundamental right, there can never be any government restriction or limitation on such right.

¶ 50 The second amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 51 The United States Supreme Court has determined that the second amendment guarantees a personal right to keep and bear arms for lawful purposes. *McDonald*, 561 U.S. at 780. The central component of the right is the right of armed self-defense, most notably in the home. *Heller*, 554 U.S. at 595, 599-600. Our supreme court has held that the second amendment protects an individual's right to carry a ready-to-use gun outside the home, subject to certain regulations. See *People v. Chairez*, 2018 IL 121417, ¶ 26.

¶ 52 Similarly, article I, section 22, of the Illinois Constitution provides that, "[s]ubject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. Our supreme court has held that the right to arms secured by the Illinois Constitution, which did not exist prior to 1970, is subject to substantial infringement in the exercise of the police power. *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 509 (1984).

¶ 53 The question in determining whether a regulation is lawful is whether the law impermissibly encroaches on conduct at the core of the second amendment. *Chairez*, 2018 IL 121417, ¶ 26. Since *Heller* and *McDonald*, courts have begun to develop a general framework for analyzing the newly enunciated second amendment right. *Wilson v. County of Cook*, 2012 IL 112026, ¶ 40. These courts have endeavored to (1) outline the appropriate scope of the individual second amendment guarantees as defined in *Heller* and (2) determine the appropriate standard of scrutiny for laws that burden these rights. *Id.* The Supreme Court has not definitively resolved the standard for evaluating second amendment claims. See *Heller*, 554 U.S. at 628.

¶ 54 Courts have generally employed a two-pronged test to determine whether statutes implicating the second amendment are constitutional. The first inquiry is whether the challenged law imposes a burden on conduct falling within the scope of the second amendment guarantee, which involves a textual and historical inquiry to determine whether the conduct was understood to be within the scope of the right at the time of ratification. *Id.* at 634-35; *Wilson*, 2012 IL 112026, ¶ 41. If the government can establish that the challenged law regulates activity falling outside the scope of the second amendment right, then the regulated activity is categorically unprotected. *Wilson*, 2012 IL 112026, ¶ 41. If the historical evidence is inconclusive or suggests that the regulated activity is not categorically unprotected, then there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of second amendment rights. See *Heller*, 554 U.S. at 703 (Breyer, J., dissenting, joined by Stevens, Souter, and Ginsburg, JJ.); *Wilson*, 2012 IL 112026, ¶ 42.

¶ 55    Here, plaintiffs contend that the firearms and ammunition taxes place an impermissible burden on their second amendment right, which is the right to keep and bear arms, as explained in *Heller*, *McDonald*, and their progeny.

¶ 56    When evaluating a facial constitutional challenge, a court must evaluate the challenged statute against the relevant constitutional doctrine, independent of the statute's application to particular cases. *Guns Save Life*, 2019 IL App (4th) 190334, ¶ 44. The Supreme Court noted in *Heller* that the "right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626 (majority opinion). Additionally, the Court noted that nothing in its decision "should be taken to cast doubt on longstanding prohibitions on *** laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27.

¶ 57    Turning to the ordinances at issue here, while they involve firearms and ammunition, it is clear that the challenged taxes on the purchases of firearms and certain types of ammunition within the County do not restrict the ownership of firearms or ammunition. It is the right of ownership of firearms and, correspondingly, ammunition, that is at the core of the second amendment, which, as noted by *Heller*, is not itself unlimited. The taxes could reasonably be considered a condition on the commercial sale of arms. *Id.*

¶ 58    The taxes at issue are more akin to various other types of sales taxes imposed on the purchase of goods and services—the responsibility of paying such taxes falls on the consumer and are collected by the retailer because of the impracticality of the County collecting such tax from the consumer. See *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 418 (1996). Plaintiffs have not cited, nor have we found, any case law which supports the position that imposing a sales tax on the purchase of firearms or ammunition violated the second amendment. The taxes at issue are nothing more than a tax on the sale of tangible personal property. See *American Beverage Ass'n v. City of Chicago*, 404 Ill. App. 3d 682, 685 (2010) (the five-cent tax on each bottle of water purchased at retail is a tax on the sale of tangible personal property).

¶ 59    Nor are the taxes at issue prohibitive or exclusionary; we find it difficult to say that the taxes, $25 and $.05 per round respectively, are anything more than a "marginal, incremental or even appreciable restraint" on one's second amendment rights. (Internal quotation marks omitted.) *Kwong v. Bloomberg*, 723 F.3d 160, 167 (2d Cir. 2013); *United States v. DeCastro*, 682 F.3d 160, 166 (2d Cir. 2012). To be sure, while it is clear that the firearms tax and the ammunition tax increase the costs of purchasing firearms or ammunition in Cook County, a law does not substantially burden a constitutional right simply because it makes the right more expensive or difficult to exercise. *Kwong*, 723 F.3d at 167-68; *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 874 (1992) (opinion of O'Connor, Kennedy, and Souter, JJ.). Plaintiffs have not pleaded any facts to support its conclusion that such taxes impermissibly restrict the right to keep and bear arms. Plaintiffs, and any other purchasers of firearms and ammunition, are already subject to sales tax on the purchases. Plaintiffs do not argue that such sales tax on the purchase of firearms and ammunition violates their right to keep and bear arms. Similarly, we find that the additional county taxes on the purchase of guns and ammunition do not infringe upon any protected second amendment right under the federal constitution or section 22 of article I of the Illinois Constitution.

¶ 60                    2. Invalid Exercise of the County's Taxing Power

¶ 61      Nevertheless, plaintiffs contend that the circuit court's erroneous conclusion that the firearms and ammunition taxes were valid exercises of the County's taxing power was in violation of the federal and state constitutions. This argument goes to the second prong of the analysis, namely, the strength of the government's justification for restricting or regulating the exercise of second amendment rights. *Heller*, 554 U.S. at 703 (Breyer, J., dissenting, joined by Stevens, Souter, and Ginsburg, JJ.).

¶ 62      We decline to reach plaintiffs' argument because we have determined that the challenged ordinances do not violate the second amendment under *Heller* and its progeny but are instead permissible conditions on the exercise of one's second amendment rights. *Id.* at 626-27 (majority opinion).


¶ 63                         3. Violation of the Uniformity Clause

¶ 64      Next, plaintiffs contend that the firearms and ammunition taxes are unconstitutional under article IX, section 2, of the Illinois Constitution (the uniformity clause) (Ill. Const. 1970, art. IX, § 2) because they only fall on the law-abiding citizens of Illinois who possess valid FOID cards and are legally entitled to purchase firearms and ammunition; they draw an irrational distinction between firearms and ammunition purchased within the County and those purchased elsewhere but transported into the County for use there; and there is no rational distinction related to the purpose of the taxes between those citizens subjected to them and the federal and state personnel, veterans organizations, and law enforcement personnel who are exempted from them. Plaintiffs conclude that the circuit court erred in granting summary judgment in favor of defendants on this issue.

¶ 65      In response to plaintiffs' argument, defendants acknowledge that the ammunition tax classifies between centerfire and rimfire ammunition but argue that the classification is based on lethality. Because centerfire ammunition is more lethal than rimfire ammunition, the County had a reasonable basis for taxing it at a higher rate and raising more revenue to finance the medical services that the County provides for victims of gun violence. Defendants further contend that there is a real and substantial difference between purchasers and nonpurchasers of firearms and ammunition. They argue that the County has applied the taxes uniformly within the limits of its territorial jurisdiction and that our supreme court has found a tax to be valid under the uniformity clause, regardless of whether the individuals taxed are purportedly not the cause of the problem that the tax seeks to remedy, citing *Marks v. Vanderventer*, 2015 IL 116226, ¶ 21, in support. Defendants conclude that a rational relationship exists between the purchase of firearms and ammunition and the need to ameliorate the harms that gun violence causes in the County. Further, defendants contend that there is a rational distinction between those subjected to the taxes and those exempted—namely, that the exempted parties' primary purpose in using firearms is to serve the community.

¶ 66      We note that the scope of a court's inquiry when a tax has been challenged on uniformity grounds is relatively narrow. *Moran Transportation Corp. v. Stroger*, 303 Ill. App. 3d 459, 473 (1999). Statutes are presumed to be constitutional, and broad latitude is afforded to legislative classifications for taxing purposes. *Id.*

¶ 67      The uniformity clause provides as follows:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2.

¶ 68　　" 'To survive scrutiny under the uniformity clause, a nonproperty tax classification must be based on a real and substantial difference between the people taxed and those not taxed, and the classification must bear some reasonable relationship to the object of the legislation or to public policy.' " *Moran Transportation Corp.*, 303 Ill. App. 3d at 473 (quoting *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 250 (1996)).

¶ 69　　A plaintiff challenging a tax classification has the burden of showing that it is arbitrary or unreasonable. *Id.* at 473-74. Statutes are presumed constitutional, and broad latitude is afforded to legislative classifications for taxing purposes. *Geja's Café v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 248 (1992). Moreover, a tax classification must be upheld if any statement of facts can be conceived that would reasonably sustain the classification. *Moran Transportation Corp.*, 303 Ill. App. 3d at 473-74.

¶ 70　　Here, the circuit court correctly determined that the classifications in the taxes were valid. The County's proffered reasons for the classifications are reasonably related to the objectives of the ordinances. We conclude that plaintiffs' claims fail.

¶ 71　　　　　　　　C. Preemption by FOID Card Act and Concealed Carry Act

¶ 72　　Finally, plaintiffs next contend that the challenged taxes are preempted by the FOID Card Act (430 ILCS 65/13.1(e) (West 2018)) and the Concealed Carry Act (430 ILCS 66/90 (West 2018)) if they are construed as regulatory measures. Specifically, plaintiffs contend that the FOID Card Act expressly preempts local laws regulating the possession of handguns and handgun ammunition by FOID card holders and that the Concealed Carry Act contains similarly preemptive language regarding any ordinance that purports to impose regulations or restrictions on licensees or handguns and ammunition.

¶ 73　　Defendants contend that plaintiffs' arguments are without merit because home rule entities have a broad authority to enact taxes subject to narrow limitations not at issue here. Additionally, defendants contend that even under the narrowest home rule analysis (application to non-tax ordinances), the plain language of the FOID Card Act and Concealed Carry Act only prohibit enactments that are inconsistent with those statutes.

¶ 74　　The doctrine of preemption is applied where enactments of two unequal legislative bodies are inconsistent. *Lily Lake Road Defenders v. County of McHenry*, 156 Ill. 2d 1, 8 (1993). Home rule is based on the assumption that municipalities should be allowed to address problems with solutions tailored to their local needs. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 29.

¶ 75　　As noted previously, the County is a home rule unit within the State of Illinois. See *Mulligan v. Dunne*, 61 Ill. 2d 544, 548 (1975). The powers of home rule units are derived from section 6(a) of article VII of the 1970 Illinois Constitution:

"[A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for protection of the public health, safety, morals and welfare; to license, to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

Section 6(a) was written with the intention to give home rule units the broadest powers possible. *Palm*, 2013 IL 110505, ¶ 30. The General Assembly may, however, preempt the exercise of a unit's home rule powers by expressly limiting that authority. *Id.* ¶ 31. To restrict the concurrent exercise of home rule power, the General Assembly must enact a law specifically stating that home rule authority is limited. *Id.* ¶ 32.

¶ 76    The interpretation of state statutes and determining whether state law preempts a local ordinance is a question of law subject to *de novo* review. *Village of Northfield v. BP America, Inc.*, 403 Ill. App. 3d 55, 57-58 (2010).

¶ 77    Section 13.1(a) of the FOID Card Act provides that:

> "Except as otherwise provided in the Firearm Concealed Carry Act and subsections (b) and (c) of this Section, the provisions of any ordinance enacted by any municipality which requires registration or imposes greater restrictions or limitations on the acquisition, possession and transfer of firearms than are imposed by this Act, are not invalidated or affected by this Act." 430 ILCS 65/13.1(a) (West 2018).

¶ 78    Section 13.1(b) of the FOID Card Act provides that:

> "Notwithstanding subsection (a) of this Section, the regulation, licensing, possession, and registration of handguns and ammunition for a handgun, and the transportation of any firearm and any ammunition by a holder of a valid Firearm Owner's Identification Card issued by the Department of State Police under this Act are exclusive powers and functions of this State. Any ordinance or regulation, or portion of that ordinance or regulation, enacted on or before the effective date of this amendatory Act of the 98th General Assembly that purports to impose regulations or restrictions on a holder of a valid [FOID] Card issued by the Department of State Police under this Act in a manner that is inconsistent with this Act *** shall be invalid in its application to a holder of a valid [FOID] Card issued by the Department of State Police under this Act." 430 ILCS 65/13.1(b) (West 2018).

Section 13.1(e) of the FOID Card Act provides that "[t]his Section is a denial and limitation of home rule powers and functions under subsection (h) of Section 6 of Article VII of the Illinois Constitution." 430 ILCS 65/13.1(e) (West 2018).

¶ 79    Similarly, section 90 of the Concealed Carry Act states:

> "The regulation, licensing, possession, registration, and transportation of handguns and ammunition for handguns by licensees are exclusive powers and functions of the State. *** This Section is a denial and limitation of home rule powers and functions under subsection (h) of Article VII of the Illinois Constitution." 430 ILCS 66/90 (West 2018).

¶ 80    Section 6 of article VII of the Illinois Constitution provides that: "(h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit other than a taxing power." Ill. Const. 1970, art. VII, § 6(h).

¶ 81    Section 6 of article VII specifically states that the General Assembly may limit any power or function of a home rule unit other than a taxing power. The power to regulate and the power to tax are separate and distinct powers. *Town of Cicero v. Fox Valley Trotting Club, Inc.*, 65 Ill. 2d 10, 16-17 (1976); *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 62; *Midwest Gaming Entertainment, LLC v. County of Cook*, 2015 IL App (1st) 142786, ¶ 63. Here, it is taxes at issue and not any regulatory ordinance. *Midwest Gaming*, 2015 IL App (1st) 142786,

¶ 66. Accordingly, plaintiffs' argument that the County's firearms and ammunition taxes are preempted by the FOID Card Act and the Concealed Carry Act are without merit.

¶ 82     We find that the circuit court properly granted summary judgment in favor of defendants.

¶ 83                                        CONCLUSION

¶ 84     In sum, we hold that (1) Smolenski and Maxon lack standing to challenge the firearm tax, (2) Maxon lacks standing to challenge the ammunition tax, (3) Smolenski had standing to challenge the ammunition tax, and (4) GSL had associational standing to challenge both taxes. Accordingly, the circuit court erred in finding that Maxon had standing to challenge the ammunition tax, and we reverse that finding. See *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 103. Further, we find that the circuit court properly granted summary judgment in favor of defendants.

¶ 85     Affirmed in part and reversed in part.