**2021 IL 126014**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126014)

GUNS SAVE LIFE, INC., *et al.*, Appellants, v. ZAHRA ALI, Director of the Department of Revenue of Cook County, *et al.*, Appellees.

*Opinion filed October 21, 2021.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Justices Garman, Neville, Overstreet, and Carter concurred in the judgment and opinion.

Justice Michael J. Burke specially concurred, with opinion.

Chief Justice Anne M. Burke took no part in the decision.

**OPINION**

¶ 1     This case involves a challenge to two tax ordinances imposed by Cook County on the retail purchase of firearms and firearm ammunition. The circuit and appellate

courts upheld the taxes against challenges based on the second amendment to the United States Constitution, the Illinois Constitution, and state preemption. 2020 IL App (1st) 181846. For the following reasons, we reverse, in part, the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3         In 2012, the Cook County Board of Commissioners (Board) enacted the Cook County Firearm Tax Ordinance. Cook County Ordinance No. 12-O-64 (adopted Nov. 9, 2012) (codified at Cook County Code of Ordinances art. XX, §§ 74-665 through 74-675 (County Code)). The Firearm Tax Ordinance imposed a $25 tax on the retail purchase of a firearm within Cook County. Cook County Code of Ordinances ch. 74, art. XX, § 74-668 (adopted Nov. 9, 2012).

¶ 4         Thereafter, in 2015, the Board passed an ordinance to amend the County Code to include a tax on the retail purchase of firearm ammunition at the rate of $0.05 per cartridge for centerfire ammunition and $0.01 per cartridge for rimfire ammunition. Cook County Ordinance No. 15-6469 (adopted Nov. 18, 2015), (codified at Cook County Code of Ordinances ch. 74, art. XX, § 74-668 (eff. June 1, 2016)).[1]

¶ 5         Under the ordinances, the taxes levied on the retail purchaser are imposed in addition to all other taxes imposed by the County of Cook, the State of Illinois, or any municipal corporation or political subdivision. Cook County Code of Ordinances ch. 74, art. XX, § 74-668(c) (eff. June 1, 2016). The revenue generated from the tax on ammunition is directed to the Public Safety Fund for operations related to public safety. *Id.* § 74-677. By contrast, the revenue generated from the tax on firearms is not directed to any specified fund or program. Any person who fails to remit the taxes is subject to a $1000 fine for the first offense and a $2000 fine for subsequent offenses. *Id.* § 74-671.

¶ 6         Plaintiffs—Guns Save Life, Inc.; DPE Services, Inc., doing business as Maxon Shooter's Supplies and Indoor Range (Maxon); and Marilyn Smolenski, a resident of Cook County—sought declaratory and injunctive relief against defendants: Cook

---

[1]The 2015 amendment also amended the ordinance's name to the Cook County Firearm and Firearm Ammunition Tax Ordinance.

County; Zahra Ali, Director of the Department of Revenue of Cook County; and Thomas J. Dart, Cook County Sheriff. In plaintiffs' second amended four-count complaint, they alleged that the firearm and ammunition taxes facially violate the second amendment to the United States Constitution (U.S. Const., amend. II); article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22) (concerning the right to bear arms); and article IX, section 2, of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2) (the uniformity clause). Plaintiffs also alleged that the taxes are preempted by the Firearm Owners Identification Card Act (FOID Card Act) (430 ILCS 65/13.1 (West 2020)) and the Firearm Concealed Carry Act (Concealed Carry Act) (430 ILCS 66/90 (West 2020)).

¶ 7        In response, defendants filed a motion to dismiss for lack of standing and failure to state a claim upon which relief could be granted. The circuit court granted defendants' motion, in part. It held that retailer Maxon and resident Smolenski lacked standing to bring their claims with respect to the firearm tax; however, the court ruled that the advocacy group, Guns Save Life, Inc., had associational standing to assert claims challenging both the firearm and ammunition tax.

¶ 8        The parties subsequently filed cross-motions for summary judgment on the remaining claims. The circuit court denied plaintiffs' motion and granted summary judgment in favor of defendants. Specifically, the court determined that the taxes did not infringe upon any federal or state constitutional right to bear arms because they (1) constituted a proper exercise of Cook County's home rule taxing powers and (2) did not meaningfully impede plaintiffs' ability to exercise their right to bear arms. The court found that plaintiffs provided no evidence that the taxes would prevent ownership or possession of firearms or that the taxes would affect the ability of law-abiding individuals to retain firearms for self-defense.

¶ 9        The court further concluded that, even if the taxes burdened constitutionally protected conduct, they nonetheless were substantially related to the important governmental interest of public safety because they directed revenue to specific programs designed to combat gun violence. With respect to preemption, the circuit court held that neither the FOID Card Act nor the Concealed Carry Act's plain language preempted Cook County's taxing powers. Lastly, the court determined that plaintiffs failed to carry their burden of showing that the different rates of ammunition classification in the ammunition tax violated the uniformity clause.

¶ 10    The appellate court affirmed in part and reversed in part. 2020 IL App (1st) 181846, ¶ 85. The court affirmed the circuit court's dismissal of Smolenski's claims for lack of standing, holding that she had no standing to challenge the firearms tax because she had not paid it. *Id.* ¶ 33. As to Maxon, the appellate court reversed the circuit court's holding that it had standing to challenge the ammunition tax and held that the retailer lacked standing to challenge either tax because the taxes were paid by the consumer, not the retailer. *Id.* ¶¶ 37-38.

¶ 11    The appellate court also affirmed the circuit court's grant of summary judgment to defendants, finding that the challenged taxes did not restrict plaintiffs' ownership of firearms and ammunition, which was at the core of the second amendment. Rather, the court found the taxes were akin to other types of sales taxes imposed on the purchase of goods and services and were not more than a marginal restraint upon any protected right under the United States or Illinois Constitution. *Id.* ¶¶ 57-59. The court further held that the FOID Card Act and Concealed Carry Act did not preempt the ordinances; it determined that the Acts only preempted local authorities from exercising the power to regulate firearms, not the power to tax them. *Id.* ¶ 81. Additionally, the court affirmed the circuit court's determination that the taxes did not violate the uniformity clause, concluding that the classifications were valid and reasonably related to the objectives of the ordinances. *Id.* ¶ 70.

¶ 12    We allowed plaintiffs' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Oct. 1, 2019).

¶ 13                                    ANALYSIS

¶ 14    Plaintiffs' challenge to the firearm and ammunition taxes arises in the context of cross-motions for summary judgment where the circuit court entered a judgment in favor of defendants. Summary judgment is appropriate if the pleadings, depositions, admissions, and affidavits on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 20. A circuit court's order granting summary judgment is reviewed *de novo*. *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17.

¶ 15        Before addressing the constitutionality of the ordinances, we consider a threshold question regarding the nature of the ordinances. The parties concede before this court that the ordinances do not regulate firearms or ammunition under the County's home rule police power authority but, rather, levy a tax under its home rule taxing authority. See *Rozner v. Korshak*, 55 Ill. 2d 430, 432 (1973) (recognizing that "[t]he power to regulate and the power to tax are distinct powers"). We agree that, under the plain language of the ordinances, this case does not involve any exercise of a home rule unit's regulatory powers.

¶ 16        In construing the nature of a municipal ordinance, we apply the same rules as those which govern the construction of statutes. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008). As with statutes, the best indicator of a municipality's intent is the language used in the ordinance, given its plain and ordinary meaning. *Cooke v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 52.

¶ 17        The ordinances are part of chapter 74 of the Cook County Code of Ordinances, which is titled "Taxation." See Cook County Code of Ordinances ch. 74. The substance of the ordinances also plainly reveals that the purpose is to levy a tax to generate revenue. See, *e.g.*, Cook County Code of Ordinances ch. 74, art. XX, § 74-677 (eff. Nov. 18, 2015). Multiple sections pertain to the logistics of collecting and remitting the taxes. See *id.* §§ 74-669, 74-672, 74-673. Furthermore, the express language of the ordinances reveals that the taxes are imposed "in addition to all other taxes imposed" by the County. *Id.* § 74-668(c). Thus, we are confronted solely with a taxing measure and a type of tax that is in addition to any generally applicable sales tax on the retail purchase of goods or services. *Id.* The taxing measure is also distinct from any registration or licensing fee involving firearms and ammunition. In that light, we turn to plaintiffs' constitutional contentions.

¶ 18        We begin our analysis with the Illinois constitutional claims and need not consider the federal constitutional claim, as we find dispositive the claim that the taxes violate the uniformity clause. Ill. Const. 1970, art. IX, § 2. The constitutionality of an ordinance presents a question of law, subject to *de novo* review. *Grand Chapter, Order of the Eastern Star of the State of Illinois v. Topinka*, 2015 IL 117083, ¶ 10.

¶ 19        The uniformity clause provides that, "[i]n any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the

subjects and objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2.

¶ 20    Generally, to survive scrutiny, a nonproperty tax classification must (1) be based on a real and substantial difference between the people taxed and those not taxed and (2) bear some reasonable relationship to the object of the legislation or to public policy. *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003). Before this court, plaintiffs have abandoned their argument based on differences between tax classifications for centerfire and rimfire ammunition, distinctions between in-county and out-of-county purchasers, and any distinction between retail purchasers and those exempt from the tax, including law enforcement. Instead, the inquiry is primarily focused on the second prong, whether the taxing classification at issue— a special tax on the retail purchases of firearms and firearm ammunition—bears some reasonable relationship to the object of the legislation or to public policy.

¶ 21    This second prong is typically a narrow inquiry. While a municipality must "produce a justification" for its classification, we normally uphold a taxing classification as long as "a set of facts 'can be reasonably conceived that would sustain it.' " *Empress Casino Joliet Corp. v. Giannoulias*, 231 Ill. 2d 62, 73 (2008) (quoting *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 248 (1992)). Once the municipality produces a justification, the plaintiff then has the burden to persuade the court that the explanation is insufficient as a matter of law or unsupported by the facts. *Arangold*, 204 Ill. 2d at 156.

¶ 22    Here, the entity responsible for justifying the tax, the County, maintains that the tax classification is justified since a reasonable relationship exists between the special tax and the object of the ordinances. The proffered justification for the taxes is to fund the staggering economic and social cost of gun violence in Cook County. The County asserts that firearms and ammunition are instruments of death and that their harmful effects cost the County immeasurably in terms of public health, safety, and welfare.

¶ 23    The County presents the following statistics to quantify the problem. In 2017 alone, the Cook County Health and Hospitals System (CCHHS) treated more than 1100 patients with gunshot wounds, spending $30,000 to $50,000 on each patient. In total, CCHHS spends approximately $30 to $40 million annually to treat gunshot

wound patients, 25% of whom lack health insurance entirely. During the first six months of 2020, the number of gunshot wound victims that CCHHS treated increased by 20% compared to the same time frame in 2019. The County asserts that the tax is a source of funding for gun safety or violence prevention programs and a source of revenue for the criminal justice agencies charged with combatting gun violence, which benefit everyone in the County.

¶ 24        Further, the County maintains that, to the extent plaintiffs argue that law-abiding citizens who purchase firearms and ammunition neither benefit from the tax nor cause the problems asserted to be remedied by it, this court has rejected the notion that such a nexus is required. The County relies on *Marks v. Vanderventer*, where we held that a tax is proper under the uniformity clause even where "the burden caused by imposition of [a tax] falls on a group who neither benefits from the [tax] nor caused the problems to be remedied by the [tax]." 2015 IL 116226, ¶ 22.

¶ 25        In the context of due process, we have explained that

> " '[a] tax is not an assessment of benefits. It is *** a means of distributing the burden of the cost of government. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. [Citation.] Any other view would preclude the levying of taxes except as they are used to compensate for the burden on those who pay them, and would involve the abandonment of the most fundamental principle of government—that it exists primarily to provide for the common good.' " *Arangold*, 204 Ill. 2d at 151-52 (quoting *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 522-23 (1937)).

¶ 26        To overcome the County's proffered justification, plaintiffs maintain that, as we consider whether the tax classification is justified in relation to the object of the legislation, we must also recognize the unique nature of the classification involved here, which they argue burdens the fundamental right to keep and bear arms for self-defense.

¶ 27        Relying primarily on *Boynton v. Kusper*, 112 Ill. 2d 356 (1986), plaintiffs assert that the ordinances may not single out the exercise of a fundamental right for special

taxation to raise revenue for the general welfare. Plaintiffs further argue that the firearm tax merely funds the general revenue fund and that neither the firearm nor the ammunition tax is specifically directed at gun violence prevention measures.

¶ 28    We agree that the ordinances impose a burden on the exercise of a fundamental right protected by the second amendment. At its core, the second amendment protects the right of law-abiding citizens to keep and bear arms for self-defense in the home. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). In *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the United States Supreme Court stated that "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." See also *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 37 ("the second amendment right recognized in *Heller* is a personal liberty guaranteed by the United States Constitution and the fourteenth amendment" (citing *McDonald*, 561 U.S. at 791)).

¶ 29    While the taxes do not directly burden a law-abiding citizen's right to use a firearm for self-defense, they do directly burden a law-abiding citizen's right to acquire a firearm and the necessary ammunition for self-defense. See *Illinois Ass'n of Firearm Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 938 (2014) (noting that the acquisition of firearms is a fundamental prerequisite to legal gun ownership); *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (the right to possess a firearm for self-defense implies a corresponding right to acquire the ammunition necessary to use them for self-defense).

¶ 30    This court has not yet considered the analytical framework for addressing a tax classification that bears on a fundamental right in the context of a uniformity clause challenge. Thus, we look to other contexts for guidance. In *Boynton*, we struck down a tax imposed upon those who applied for marriage licenses as violative of the due process clause. 112 Ill. 2d at 368. The statute required that $10 of the fee collected for issuing a marriage license must be directed into the Domestic Violence Shelter and Service Fund (see Ill. Rev. Stat. 1983, ch. 40, ¶¶ 2403, 2403.1). *Boynton*, 112 Ill. 2d at 359-60. The plaintiffs challenged that portion of the license fee as an unconstitutional tax violative of due process and the uniformity clause. *Id.* at 360.

¶ 31 Although we limited our holding to the due process clause challenge, finding that the relationship between the purchase of a marriage license and domestic violence was too remote to satisfy the rational basis test (*id.* at 367-68), we also found that the fee was a tax that directly impeded the fundamental right to marry and that it failed to satisfy a heightened standard of review (*id.* at 369). We highlighted that

> "we are not dealing with an attempt to impose reasonable regulations upon those who desire to enter into the marriage contract. Nor are we concerned with a general State regulation or tax. Instead, by the statute in question the legislature has singled out marriage as a special object of taxation." *Id.*

¶ 32 The court found that imposing the special tax upon the issuance of a marriage license directly impeded the exercise of the fundamental right to marry and, therefore, must be subjected to heightened scrutiny, rather than the lesser rational basis test. *Id.* The court held that "[w]hen a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important State interests and is closely tailored to effectuate only those interests." *Id.* (citing *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978)).

¶ 33 We further rejected the notion that, because the amount of the tax was seen as *de minimis*, it did not substantially interfere with the right to marry. Rather, we held that, "[o]nce it is conceded that the State has the power to impose a special tax on a marriage license, that is, to single out marriage for special tax consideration, there is no limit on the amount of the tax that may be imposed." (Emphasis omitted.) *Id.* at 369-70. We concluded that, "[o]nce we acknowledge the State's power to specially tax the issuance of marriage licenses, a significant interference with the fundamental right to marry has been established." *Id.* at 370. Accordingly, a more heightened level of scrutiny was required than rational basis.

¶ 34 In other contexts, we have also applied different levels of scrutiny depending upon the nature of the classification involved. For example, in the equal protection context, we have held that, where a statute does not affect a fundamental right or involve a suspect class, it need only satisfy the rational basis test, whereas classifications affecting fundamental rights are subject to heightened scrutiny. See, *e.g.*, *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323 (1996).

¶ 35      We have further explained that the

> "uniformity clause was intended to be a broader limitation on legislative power *** than the limitation of the equal protection clause [citation] and was meant to ensure that taxpayers would receive added protection in the state constitution based upon a standard of reasonableness that is more rigorous than that contained in the federal constitution [citation]." *Arangold*, 204 Ill. 2d at 153.

¶ 36      While the standards articulated in these cases were not directly made in the context of a uniformity clause analysis, they inform our analysis in evaluating a tax classification that directly implicates a fundamental right. As in *Boynton*, we are not considering a reasonable regulation on the purchase of firearms or a generally applicable tax on the sale of goods. Instead, the County has singled out the retail purchase of firearms and ammunition as "a special object of taxation."[2] Thus, we hold that, where a tax classification directly bears on a fundamental right, the government must establish a closer tie between the tax classification and the object of the legislation. To pass scrutiny in that instance, we hold that the tax classification must be substantially related to the object of the legislation.

¶ 37      In applying that standard to the firearm and ammunition taxes, we recognize that the uniformity clause was "not designed as a straitjacket" for the County (*Arangold*, 204 Ill. 2d at 153) and acknowledge the costs that gun violence imposes on society. Nevertheless, the relationship between the tax classification and the use of the tax proceeds is not sufficiently tied to the stated objective of ameliorating those costs.

¶ 38      Under the plain language of the ordinances, the revenue generated from the firearm tax is not directed to any fund or program specifically related to curbing the cost of gun violence. Additionally, nothing in the ordinance indicates that the proceeds generated from the ammunition tax must be specifically directed to

---

[2]The taxes levied here are novel. We know of only two other similar tax ordinances enacted by the cities of Seattle and Tacoma, Washington. See City of Seattle Ordinance No. 124833 (eff. Jan. 1, 2016) (codified at Seattle Municipal Code § 5.50.030); City of Tacoma Ordinance No. 28624 (eff. Jan. 1, 2020).

initiatives aimed at reducing gun violence. Thus, we hold the tax ordinances are unconstitutional under the uniformity clause.

¶ 39    Since our holding disposes of this case, we need not address plaintiffs' additional challenges to the ordinances.

¶ 40                                    CONCLUSION

¶ 41    In sum, for the foregoing reasons, we hold that to satisfy scrutiny under a uniformity challenge, where a tax classification directly bears on a fundamental right, the government must establish that the tax classification is substantially related to the object of the legislation. Under that level of scrutiny, the firearm and ammunition tax ordinances violate the uniformity clause. Accordingly, we reverse the summary judgment entered in favor of defendants and remand to the circuit court for entry of summary judgment in favor of plaintiffs.

¶ 42    Reversed and remanded.

¶ 43    JUSTICE MICHAEL J. BURKE, specially concurring:

¶ 44    I agree with the majority that Cook County's special tax on firearms and ammunition violates the uniformity clause of the Illinois Constitution. Therefore, the appellate court's judgment must be reversed and summary judgment entered on behalf of plaintiffs. I write separately because I believe that there is an even graver problem with the County's tax that the majority should not ignore.

¶ 45    Article I, section 22, of the Illinois Constitution states that "the right of the individual citizen to keep and bear arms shall not be infringed" and is "[s]ubject only to the police power." Ill. Const. 1970, art. I, § 22. The majority agrees that the taxes in this case burden the fundamental second amendment right to keep and bear arms. See *supra* ¶ 28; U.S. Const., amend. II. The majority also notes that "we are not considering a reasonable regulation on the purchase of firearms or a generally applicable tax on the sale of goods." *Supra* ¶ 36. Rather, the County has imposed a special tax on the purchase of firearms and ammunition. *Supra* ¶ 20.

¶ 46    As numerous Illinois cases explain, under our state constitution, "the power to regulate and the power to tax *** are separate and distinct governmental purposes." *Greater Chicago Indoor Tennis Clubs, Inc. v. Village of Willowbrook*, 63 Ill. 2d 400, 402 (1976); *Paper Supply Co. v. City of Chicago*, 57 Ill. 2d 553, 576 (1974); *Rozner v. Korshak*, 55 Ill. 2d 430, 432-33 (1973); accord Ill. Const. 1970, art. VII, § 6(a) (distinguishing the power "to regulate for the protection of the public health, safety, morals and welfare" and "to tax"). While the government may *regulate* the right to keep and bear arms (within other constitutional limits, under its police power), by the plain terms of article I, section 22, it has no authority to single out the exercise of that right for *taxation*.

¶ 47    The majority's analysis is problematic because it leaves space for a municipality to enact a future tax—singling out guns and ammunition sales—that is more narrowly tailored to the purpose of ameliorating gun violence. Specifically, the majority states that the tax ordinance fails to pass constitutional muster only because "the relationship between the tax classification and the use of the tax proceeds is not sufficiently tied to the stated objective of ameliorating [the costs that gun violence imposes on society]." *Supra* ¶ 37. The majority then admonishes that revenue generated from the taxes is not directed at any initiative or program directed at curbing gun violence or reducing it costs. *Supra* ¶ 38. The only problem with the majority's approach—and the guidance it offers the County—is that such counsel, if followed, would still violate the provision of the Illinois Constitution noted above that plainly states that the right of the individual to keep and bear arms is subject only to the police power, not the power to tax. See Ill. Const. 1970, art. I, § 22. Thus, the majority is leading the County down a road of futility.

¶ 48    In upholding the tax, the appellate court did not even address plaintiffs' argument that they made before that court that the tax violates article I, section 22, of the Illinois Constitution. Defendants' brief before this court hardly does any better than the appellate court did. They raise three meritless points in response. In that regard, they first argue that article I, section 22, is not implicated because the County's tax is *de minimis* and therefore does not infringe the right to keep and bear arms. As the majority in the present case points out, we rejected the same sort of argument in *Boynton v. Kusper*, 112 Ill. 2d 356, 359-60, 368 (1986), when we found a nominal marriage license tax violated due process principles. See *supra* ¶ 32.

¶ 49    Next, the County defendants argue that striking down the tax under section 22 of article I "would bring about the untenable situation where a home rule entity can substantially infringe the right to bear arms pursuant to the police power yet cannot impose a *de minimis* tax." I would note that the result decried by the County is the opposite of untenable. It is the only result permitted by the plain text of section 22 of article I. The County must also keep in mind that it cannot simply use the guise of the police power to produce revenue or to tax. *Paper Supply Co.*, 57 Ill. 2d at 576. And while " 'the safety and good order of society' " may justify reasonable *regulation* of the right to keep and bear arms so long as it can survive scrutiny under our state constitution and the second amendment (see *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491-92 (1984) (quoting 6 Record of Proceedings, Sixth Illinois Constitutional Convention 88)), it does not follow that the right can be subject to discriminatory taxation in violation of the plain language of article I, section 22, of the Illinois Constitution.

¶ 50    Additionally, the County claims that it "cannot [be] explain[ed] why the General Assembly would specially preserve for home rule units a power to tax handguns"—the County cites section 90 of the Firearm Concealed Carry Act (430 ILCS 66/90 (West 2020)) and section 13.1(e) of the Firearm Owners Identification Card Act (430 ILCS 65/13.1(e) (West 2020)) for this proposition—"if article I, section 22 prohibits such taxation." The easy answer to this point is that the statutes the County mentions do not "specifically preserve" the power to tax—all they do is specifically eliminate the power to *regulate*. Moreover, the reason why those statutes preempt handgun regulations, not handgun taxes, is obvious—the Illinois Constitution only allows the legislature to preempt regulations, not taxes. And taxes that infringe the right to keep and bear arms are already precluded by the Illinois Constitution. See Ill. Const. 1970, art. I, § 22; *id.* art. VII, § 6. Moreover, even if the statutes mentioned by the County did intend to specifically preserve for home rule units the power to tax handguns in the manner under consideration here, that would not show that the framers of our constitution intended to authorize a home-rule unit's discriminatory taxation of firearms, where the text of that constitution clearly prohibits taxation that infringes on the right to keep and bear arms.

¶ 51    Again, I believe that the majority's analysis wrongly leaves the door open for a municipality to enact a future tax on firearms or ammunition that is more narrowly tailored to the purpose of ameliorating the cost of gun violence. The only problem

with that approach is that it would still violate the Illinois Constitution.

¶ 52     CHIEF JUSTICE ANNE M. BURKE took no part in the consideration or decision of this case.