2024 IL App (1st) 230413-U

SECOND DIVISION
February 20, 2024

No. 1-23-0413

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DONALD TODD VANDERMYDE and ANA ZAVALA, individually and on behalf of all others Similarly situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 22 CH 05563 |
| COOK COUNTY, ILLINOIS, a body politic, MARIA PAPPAS, as Treasurer of Cook County, Illinois, and KENNETH HARRIS, as Interim Director of the Department of Revenue of Cook County, | ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) | Honorable Eve M. Reilly, Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*: We reverse the circuit court's order dismissing this case with prejudice and remand for further proceedings; the trial court erred when it determined it was bound by a prior decision of this court which was reversed by our supreme court; after reversal the prior judgment has no precedential value.

¶ 2      Cook County imposes a special retail tax on the purchase of firearms and firearm ammunition. The firearm and firearm ammunition taxes are paid by the purchaser. Plaintiffs filed a complaint in which they contend that the taxing ordinance is unconstitutional because it violates their Second Amendment rights, and they seek money damages for themselves and for other similarly situated individuals for having been forced to pay the allegedly unconstitutional tax. Defendants filed a motion to dismiss the complaint, which was granted, and plaintiffs now appeal.

¶ 3      For the following reasons, we reverse the dismissal of the complaint and remand the case to the circuit court for further proceedings.

¶ 4                                          BACKGROUND

¶ 5      In 2012, Cook County passed an ordinance called the Cook County Firearm and Firearm Ammunition Tax Ordinance. See Cook County Ordinance No. 12-O-64 (adopted Nov. 9, 2012) (codified at Cook County Code of Ordinances art. XX, §§ 74-665 through 74-677). Under the ordinance, consumers are required to pay a $25 tax on the purchase of each firearm bought from a firearm retailer in Cook County. Cook County Code of Ordinances ch. 74, art. XX, § 74-668 (adopted Nov. 9, 2012). Three years later, on November 18, 2015, Cook County adopted an additional tax, taxing consumers for each cartridge of ammunition they purchase. Cook County Ordinance No. 15-6469 (adopted Nov. 18, 2015), (codified at Cook County Code of Ordinances ch. 74, art. XX, § 74-668 (eff. June 1, 2016). The ordinance imposes a $0.05 per cartridge tax on centerfire ammunition and $0.01 per cartridge tax on rimfire ammunition. *Id.*

¶ 6      A group of plaintiffs challenged the taxes by filing suit in the Circuit Court of Cook County in 2015. *DPE Services v. Ali*, 2015 CH 18217 (Cir. Ct. Cook Cty., Dec. 17, 2015). The plaintiffs in that case sought a declaratory judgment and injunctive relief as they contended that

the ordinance was unconstitutional. *Id*. The circuit court denied the plaintiffs' motion for summary judgment and granted summary judgment to the defendants. *Id*. The plaintiffs appealed. On appeal, the plaintiffs argued, among other things, that the taxes were unconstitutional under the Second Amendment to the U.S Constitution (U.S. Const. Amend. II. (West 2022)) and that the taxes violated the Uniformity Clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2 (West 2022)). *Guns Save Life, Inc. v. Ali*, 2020 IL App (1st) 181846, ¶¶ 46, 70. A division of this court held that the taxes did not violate the Second Amendment, and it further held that the taxes withstood scrutiny under the Uniformity Clause. *Id*. Our supreme court reversed, holding that the taxes violated the Uniformity Clause. *Guns Save Life, Inc. v. Ali*, 2021 IL 126014, ¶ 41. Because the Court found the ordinances to be unconstitutional under the Uniformity Clause, it expressly refrained from addressing the plaintiffs' Second Amendment arguments. *Id*. at ¶¶ 18, 39.

¶ 7    The gist of the supreme court's ruling in *Guns Save Life* concerned the tax classification for the firearm and ammunition taxes and the County's justification for the taxes. *Id*. at ¶¶ 19-20. The County's proffered justification for the taxes was to fund the "staggering economic and social cost of gun violence in Cook County." *Id*. at ¶ 22. The Court explained that, because the ordinances burdened a fundamental right protected by the Second Amendment, heightened scrutiny on the tie between the tax classification and the object of the legislation was required. *Id*. at ¶ 36. Under that higher level of scrutiny, the Court concluded the firearm and ammunition taxes were not sufficiently tied to the County's stated objective because the ordinance did not require the taxes to be used exclusively to address the cost of gun violence. *Id*. at ¶¶ 37-38.

¶ 8    Cook County went back to the drawing board and amended the ordinance to address the constitutional violation found by the supreme court. The County left the firearm and ammunition

taxes themselves unchanged, but to address the Uniformity Clause issue found by the supreme court, the County ordered the tax proceeds collected from the two taxes from November 4, 2021 forward to be directed into a special purpose equity fund to pay for "gun violence prevention programs as well as operations and programs aimed at reducing gun violence." Cook County Code of Ordinances ch. 74, art. XX, § 74-677 (adopted Nov. 4, 2021). This case was filed after the ordinance was amended. Plaintiffs are seeking another determination that the ordinance is unconstitutional, and they are also now seeking money damages because they were required to pay the alleged unconstitutional tax when they purchased firearms and ammunition in the past.

¶ 9    Plaintiffs Donald Todd Vandermyde and Ana Zavala are Illinois residents who purchased ammunition or firearms in Cook County and thus were obliged to pay taxes in accordance with the Cook County Firearm and Firearm Ammunition Tax Ordinance. Plaintiffs allege in their complaint that the firearm and ammunition taxes violate the Second Amendment. Plaintiffs seek damages for being made to pay the allegedly unconstitutional tax, and they seek to represent other similarly situated individuals in a class action against defendants.

¶ 10    Defendants responded to the suit with a motion to dismiss. In the motion, defendants argued: (1) the result in this case is controlled by the part of this court's prior decision upholding the ordinance in question that was not addressed by the supreme court; (2) plaintiffs fail to allege sufficient facts to go forward on their claim; (3) plaintiffs improperly seek an advisory opinion because the previous version of the ordinance has already been declared unconstitutional by the supreme court; (4) plaintiffs are not permitted to use Section 1983 and federal law to recover damages against the County for its taxation ordinances; and (5) the ordinance is permissible under the Supreme Court's fee jurisprudence.[1]

---

[1] Defendants also argued that plaintiffs' claim was barred by the statute of limitations, but that issue is not addressed by the parties on appeal.

¶ 11    In its ruling, the trial court relied on only one of the arguments raised—that the outcome is controlled by our decision in the prior appeal. The circuit court reasoned that, in the other case, the appellate court found that the statute did not violate the Second Amendment. Although the supreme court found the ordinance unconstitutional on uniformity grounds, the trial court determined the supreme court allowed the appellate court's ruling on the Second Amendment issue to stand. The trial court issued a two-page written order granting defendants' motion to dismiss. The trial court explained that it was granting the motion to dismiss because "the First District Appellate Court already determined that these additional County taxes on the purchase of guns and ammunition do not infringe upon any protected Second Amendment right" (citing *Guns Save Life*, 2020 IL App (1st) 181846, ¶ 59). The trial court relied on this court's finding that, after analyzing the text of the Second Amendment, the taxes at issue did not restrict ownership of firearms or ammunition. *Id*. at ¶¶ 54-57. The trial court found that it was bound by this court's decision in *Guns Save Life* and, therefore, granted the motion to dismiss with prejudice. Plaintiffs filed this appeal.

¶ 12                                    ANALYSIS

¶ 13    The motion to dismiss at issue on appeal contains arguments under both section 2-615 and section 2-619 of the Illinois Code of Civil Procedure as is permitted under section 619.1 of the Code which allows a defendant to file a combined motion directed at a pleading. 735 ILCS 5/2–619.1 (West 2020). When a trial court dismisses a complaint, under either section of the Code, we review the trial court's decision *de novo*. *Sandholm v. Kuecker,* 2012 IL 111443, ¶ 55.

¶ 14    A section 2-615 motion to dismiss attacks the sufficiency of a complaint and raises the question of whether a complaint states a cause of action upon which relief can be granted. *Fox v. Seiden,* 382 Ill. App. 3d 288, 294 (2008). All well-pleaded facts must be taken as true, and any

inferences should be drawn in favor of the non-movant. 735 ILCS 5/2–615 (West 2020); *Hammond v. S.I. Boo, LLC* (In re County Treasurer & Ex–Officio County Collector), 386 Ill. App. 3d 906, 908 (2008). Plaintiffs are not required to prove their case at the pleading stage; they are merely required to allege sufficient facts to state all elements that are necessary to constitute each cause of action in their complaint. *Visvardis v. Eric P. Ferleger, P.C.,* 375 Ill. App. 3d 719, 724 (2007). A section 2–615 motion to dismiss should not be granted unless no set of facts could be proved that would entitle the plaintiff to relief. *Beacham v. Walker*, 231 Ill. 2d 51, 58 (2008).

¶ 15     A section 2–619 motion to dismiss admits the legal sufficiency of the complaint. 735 ILCS 5/2–619 (West 2020). The purpose of a section 2–619 motion to dismiss is to dispose of issues of law and easily proved issues of fact at the outset of the litigation. *Henry v. Gallagher* (In re Estate of Gallagher), 383 Ill. App. 3d 901, 903 (2008). Although a section 2–619 motion to dismiss admits the legal sufficiency of a complaint, it raises defects, defenses, or some other affirmative matter appearing on the face of the complaint or established by external submissions which defeat the plaintiff's claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (2008).

¶ 16     *A. This Case is Not Controlled By Our Decision in <u>Guns Save Life</u>*

¶ 17     In the motion to dismiss and on appeal, defendants argue that plaintiffs' complaint alleging violations of their Second Amendment rights is subject to dismissal because the outcome is controlled by a prior case finding the ordinance did not violate their Second Amendment rights. *Guns Save Life*, 2020 IL App (1st) 181846. The trial court accepted this argument and in its written order, the trial court stated that it was bound to follow this court's decision in *Guns Save Life*, 2020 IL App (1st) 181846, ¶ 46, and it dismissed the case.

¶ 18 As set forth above, this court upheld the Cook County Firearm and Firearm Ammunition Tax Ordinance when it was challenged under both the Second Amendment and the Uniformity Clause. *Id*. at ¶¶ 2, 82. On appeal to the Illinois Supreme Court, however, this court's decision was reversed, as the supreme court found that the ordinance at issue violated the Uniformity Clause of the Illinois Constitution. *Guns Save Life*, 2021 IL 126014, ¶ 41. The supreme court expressly explained that it did not reach the plaintiffs' Second Amendment arguments in that case because it was invalidating the ordinance on State constitutional grounds. *Id*. at ¶ 39.

¶ 19 When the supreme court reversed this court's judgment, the appellate court's decision was abrogated. *Stamp v. Sylvan*, 391 Ill. App. 3d 117, 128 (2009) (a reversal abrogates the lower court decree and leaves the case as it stood before the entry of the now-reversed judgment); accord *Royalty Farms, LLC v. Forest Preserve District of Cook County*, 2017 IL App (1st) 161409, ¶ 28; *Galler v. Galler*, 21 Ill. App. 3d 811, 816 (1974); see also *Horace v City of Pontiac*, 575 N.W. 2d 762, 766 (Mich. 1998) (when a supreme court reverses an appellate court decision on one issue and chooses not to address a second issue in the case, no rule of law remains from the appellate court decision).

¶ 20 It is obvious that our supreme court's decision in *Guns Save Life* in no way endorsed or adopted this court's analysis of the Second Amendment issue, and nothing in this court's decision in *Guns Save Life* retained precedential value insofar as it relates to the Second Amendment question. The supreme court did not reverse this court's judgment in part, it rejected the entire judgment. Lawyers and judges can certainly review the prior panel's decision on the Second Amendment issue for its analysis of the issue, however the trial court is entitled to review and decide the Second Amendment issues raised here in the exercise of its own judgment. Therefore, we reverse the dismissal.

¶ 21    On appeal, defendants urge a number of other reasons raised in the motion that requires dismissal of the complaint that were not addressed by the trial court. We will address them in turn.

¶ 22    *B. Plaintiffs Do Not Improperly Seek An Advisory Opinion*

¶ 23    Defendants' argument that plaintiffs improperly seek an advisory opinion is directed only at plaintiff Ana Zavala. As to Zavala, plaintiffs allege in their complaint that Zavala paid the Firearm and Firearm Ammunition Tax before it was amended, effective November 4, 2021. In the record, there is a receipt from Zavala's transaction which indicates that the purchase on which she bases her claim in this case was made on July 10, 2021. Defendants thus contend that, as to Zavala, plaintiffs are seeking an advisory opinion because the ordinance applying to her transaction has already been ruled unconstitutional and has since been amended.

¶ 24    Defendants maintain that because the pre-amendment ordinance has been "authoritatively invalidated" by the supreme court, "any decision regarding whether the pre-amendment Ordinance *also* violated the Second Amendment would be wholly advisory in nature because it would merely opine on whether an already-invalidated law could have been struck down on different grounds (emphasis in original)."

¶ 25    It is imperative to the determination of this issue that Zavala seeks damages rather than simply a declaration that the statute as applied to her is unconstitutional. Were plaintiffs solely seeking a declaratory judgment that the pre-amendment ordinance was unconstitutional under the Second Amendment, we would surely reject their claim. Here, however, Zavala seeks damages on the basis that defendants violated her civil constitutional rights by enforcing an unconstitutional taxation policy against her. Even though the supreme court struck down the pre-amendment ordinance on state constitutional grounds, Zavala is nonetheless entitled to seek

8

damages on the basis that she was deprived of her money and the legitimate exercise of her constitutional rights by being forced to pay a tax that violates the constitution.

¶ 26     The basic purpose of a damages award under the Civil Rights Act of 1871 is to compensate people for injuries caused by the deprivation of constitutional rights and, thus, such awards should be governed by the principle of compensation. *Carey v. Piphus,* 435 U.S. 247, 254 (1978). If Zavala was made to pay an unconstitutional tax, she is entitled to seek damages in return of that payment. "If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18, 31 (1990). To allow a taxing entity to collect an unconstitutional tax without requiring repayment would amount to a governmental taking without due process of law. *Id*. at 33-34; see also John F. Coverdale, *Remedies for Unconstitutional State Taxes*, 32 Conn. L. Rev. 73 (1999).

¶ 27     State courts follow the same approach. See, *e.g.*, *Matter of Hawaiian Flour Mills, Inc.*, 868 P.2d 419, 428-29 (Haw. 1994) (once a plaintiff demonstrates a tax discrimination injury, it is entitled to meaningful retrospective relief from the taxing authority in the form of a refund payment); *Department of Revenue v. Kuhnlein,* 646 So. 2d 717 (Fla. 1994), *cert. denied,* 515 U.S. 1158 (1995) (a $295.00 impact fee on cars purchased or titled in other states that were then registered in Florida was unconstitutional and a full refund to all who had paid this illegal tax was the only clear and certain remedy); see also *Kerr v. Waddell*, 899 P.2d 162, 168 (Az. Ct. App. 1994).

¶ 28     Zavala's claim for damages is not mooted or cured by our supreme court invalidating the statute on State constitutional grounds nor by the County amending the statute. See *Fulton Corp. v. Faulkner*, 516 U.S. 325, 328 n. 1 (1996) (review of a plaintiff's claim for damages from a since-repealed tax was a live controversy); *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 370–71 (1982) (action for damages survived injunctive relief and agreement on limits of a settlement because, given respondents' continued active pursuit of monetary relief, the case remained definite and concrete, touching the legal relations of parties having adverse legal interests) (quoting *Aetna Life Insurance Co. v. Haworth,* 300 U.S. 227, 240–41 (1937)); *Loyal Tire & Auto Center, Inc. v. Town of Woodbury,* 445 F.3d 136, 150–51 (2d Cir. 2006) (a grant of prospective injunctive relief for the plaintiff did not fully resolve the plaintiff's claims because a viable claim for damages remained and avoided the mootness of the action) (quoting *Cook v. Colgate University,* 992 F.2d 17, 19–20 (2d Cir.1993)).

¶ 29     We find that Zavala is entitled to pursue a claim for damages even though the tax she paid has been invalidated since the time she paid it. Zavala alleges here that she was made to pay a tax in violation of her rights under the United States Constitution. Although a review of Zavala's claim requires us to look at an ordinance that has since been invalidated by the Illinois Supreme Court on state law grounds, Zavala cannot be left without a remedy should she be found to have paid a tax violating her Second Amendment rights. *McKesson Corp.*, 496 U.S. at 31-34. A favorable ruling from the Illinois courts on Zavala's damages claim, should she obtain it, would redress the financial injury she suffered during a violation of her constitutional rights.

¶ 30     Moreover, as both parties concede and acknowledge, the only difference between the two versions of the ordinance is that the revenue generated under the tax is being used for a different purpose. The 2021 amendment to the ordinance is specifically directed at addressing our

supreme court's holding that the prior version of the ordinance violated the Uniformity Clause (Ill. Const. 1970, art. IX, § 2 (West 2022)) and has no bearing on the Second Amendment's possible effect on the ordinance. Any decision on the constitutionality of the current version of the ordinance under the Second Amendment will necessarily constitute a determination of whether the prior version of the ordinance was unconstitutional on the same basis. Plaintiffs are not improperly seeking an advisory opinion and defendants are not entitled to dismissal on that basis.

¶ 31    *C. Plaintiffs Allege Sufficient Facts To Defeat the Motion to Dismiss*

¶ 32    Defendants argue that plaintiffs failed to allege sufficient facts to sustain a facial challenge to the constitutionality of the Cook County Firearm and Firearm Ammunition Tax Ordinance. Plaintiffs' claim for damages is based on their assertion that the ordinance is facially unconstitutional. In construing the validity of a municipal ordinance, the same rules are applied as those that govern the construction of statutes. *Saladrigas v. City of O'Fallon*, 2020 IL App (5th) 190466, ¶ 19. Illinois courts review a constitutional challenge to a statute or ordinance *de novo* because it presents a question of law. See *Caulkins v. Pritzker*, 2023 IL 129453, ¶ 28. In a facial challenge to the constitutionality of a statute, such as the challenge presented here, a court examines whether the statute or ordinance at issue contains "an inescapable flaw" that makes the statute "unconstitutional under every circumstance." *Accel Entertainment Gaming*, 2015 IL App (1st) 143822, ¶ 29. However, a cause of action is only subject to dismissal on the pleadings if it clearly appears that the plaintiffs cannot prove any set of facts that will entitle them to relief. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 61.

¶ 33    Defendants argue that plaintiffs fail to allege sufficient facts to go forward on their claim in three separate ways. First, defendants argue that plaintiffs "have failed to allege sufficient facts to demonstrate that all the firearms and ammunition to which the Ordinance applies are 'arms' for purposes of the Second Amendment's text. Second, defendants argue that plaintiffs "have failed to allege facts showing that the tax imposed by the Ordinance 'infringes' on any individuals' ability to keep and bear arms in every conceivable factual circumstance." Third, defendants argue that plaintiffs "have failed to allege facts showing that the tax is applicable only to law-abiding American citizens or other individuals who are similarly part of the American community." Defendants contend that, under the United States Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), factual allegations supporting each one of those elements are required to successfully state a claim.

¶ 34    As to their first argument that plaintiffs fail to state a claim, defendants argue that plaintiffs were required to "allege facts sufficient to show that the Ordinance applies only to weapons and ammunition commonly used for self-defense." Defendants rely on our supreme court's recent decision in *Caulkins v. Pritzker*, 2023 IL 129453, cert. denied, No. 23-510, 2024 WL 72021 (U.S. Jan. 8, 2024) in support of this proposition. In *Caulkins*, the supreme court did not hold that a plaintiff was required to show that a regulation *only* touches self-defense weapons in order for the Second Amendment to be implicated by that regulation. Instead, our supreme court simply set forth the applicable standard for assessing a regulation under the Second Amendment following the United States Supreme Court's decision in *Bruen*: "(1) whether a plaintiff has shown that the regulated items fall in the category of 'bearable arms' that are "commonly used" for self-defense today and, if so, (2) whether the restrictions are consistent

with 'this Nation's historical tradition of firearm regulation.' " *Caulkins*, 2023 IL 129453, ¶ 34 (internal citations omitted).

¶ 35    The ordinance itself expressly applies to retail purchases of firearms and ammunition which must be purchased from a registered retail dealer in Cook County. In their complaint, plaintiffs state that firearms are overwhelmingly chosen by American society as a means of exercising the inherent right of self-defense. Plaintiffs allege that they are both Illinois residents, and they point out that firearms and ammunition are tightly regulated at the state and federal level and that Illinois residents, such as plaintiffs, cannot purchase handguns in any state other than Illinois, and can only purchase rifles and shotguns in a small number of other states." Plaintiffs then specifically allege that Vandermyde purchased ammunition in Cook County, and he was required to pay the applicable tax. They proceed to specifically allege that Zavala purchased a handgun and ammunition in Cook County and was required to pay the applicable taxes. A receipt put into the record showed that Zavala purchased a Glock 9mm handgun and ammunition, a handgun being the "quintessential self-defense weapon." *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008); see also *Wilson v. County of Cook*, 2012 IL 112026, ¶ 44 (handguns are overwhelmingly chosen by American society for the lawful purpose of self-defense).

¶ 36    In setting forth their allegations for their proposed class action, plaintiffs explain that one of the common issues for plaintiffs themselves and the other class members was whether they all "paid the Taxes under duress in light of the fact that they had a fundamental right to acquire firearms and ammunition necessary *for their own self-defense*, but could not exercise that right unless they paid the Taxes (emphasis added)." In their allegations in support of their specific claim for damages in Count I, plaintiffs expressly recognize that "[t]he Second Amendment to

the United States Constitution 'protects an individual right of law-abiding citizens to keep and bear arms for self-defense.' " Plaintiffs further plead in that section of the complaint that both the new version and the old version of the ordinance "directly burden a law-abiding citizen's right to acquire a firearm and the necessary ammunition for self-defense." The allegations, when taken as true and considered in the light most favorable to plaintiffs, are sufficient for pleading a facial challenge to the ordinance insofar as the claim relates to "bearable arms" that are "commonly used" for self-defense.

¶ 37    As to their second argument that plaintiffs fail to state a claim, defendants argue that plaintiffs were required to plead facts showing that the Ordinance "infringes" on their right to keep and bear arms. Turning to historical text, defendants contend that, in standard American English in the Founding Era, the Second Amendment's command that the right to bear arms cannot be "infringed" would have been interpreted at the time to mean the right to bear arms cannot be "destroyed" by government regulation. Defendants claim that "infringe" meant "to violate" or "to destroy" (citing *A Dictionary of the English Language: A Digital Edition of the 1755 Classic By Samuel Johnson*, https://johnsonsdictionaryonline.com, "Infringe." Defendants thus contend "members of the founding generation would have understood that the legislature could regulate the conduct protected by the Second Amendment so long as such regulations did not destroy the underlying right." Defendants contend that this interpretation finds support in the recent U.S. Supreme Court decisions of *Bruen* and *Heller* because those cases each mentioned that some regulation of the right to bear arms was permitted but, according to defendants, the regulations addressed in those cases were unconstitutional because the laws "effectively destroyed" the plaintiffs' right to keep and bear arms. In *Guns Save Life*, this court found that "the additional county taxes on the purchase of guns and ammunition do not infringe upon any

protected second amendment right under the federal constitution." *Guns Save Life*, 2020 IL App (1st) 181846, ¶ 59. However, our supreme court ruled that the firearm tax does, in fact, burden Second Amendment rights. *Guns Save Life*, 2021 IL 126014, ¶¶ 27-29

¶ 38    In their complaint, plaintiffs allege that they were required by law to pay the taxes and did so under duress, just to be able to exercise their clear constitutional right to bear arms. Plaintiffs recount the burden the taxes placed on them, financial and otherwise, and allege that the County cannot sufficiently justify the burdens imposed by the ordinance. They claim that they have suffered financial damages and violations of their constitutional rights by being forced to comply with the unlawful ordinance. We conclude that, for purposes of satisfying the pleading standard, plaintiffs have adequately alleged that the ordinance might infringe their right to bear arms.

¶ 39    Although defendants rely upon Samuel Johnson's dictionary and claim that "infringe" means to violate or destroy, they left out that Johnson's definition was: "1. To violate; to break laws or contract. 2. to destroy; *to hinder*." *A Dictionary of the English Language: A Digital Edition of the 1755 Classic By Samuel Johnson*, https://johnsonsdictionaryonline.com, "Infringe," (last visited Jan. 15, 2024) (emphasis added). The Fourth Circuit Court of Appeals recently addressed the scope and breadth of what "infringe" means for purposes of the Second Amendment in the course of striking down Maryland's handgun qualification license regulation. *Maryland Shall Issue, Inc. v. Moore*, 86 F.4th 1038, 1040 (4th Cir. 2023), *reh'g en banc granted*, No. 21-2017 (L), 2024 WL 124290 (4th Cir. Jan. 11, 2024). The *Moore* court explained that, under the first step in *Bruen*, plaintiffs "just need to show that the law regulates a course of conduct that falls within the Amendment's plain text, *i.e.*, their ability 'to possess and carry weapons in case of confrontation.' " *Id.* at 1045 (citing *Heller*, 554 U.S. at 592). In a footnote

during the discussion of this issue, the Fourth Circuit compellingly took apart the dissent's position that "infringe" for purposes of the Second Amendment only encompasses only a complete destruction of the right to bear arms. *Id.*, fn. 8.

¶ 40    The majority in *Moore* explained that the dissent's view, which is the same as defendants' view here, was that a person's Second Amendment right is only infringed "if the government wholly or effectively bans that individual from possessing or carrying firearms." *Id.* The majority explained that a comprehensive review of the dictionary definitions of the time demonstrated that "infringe" was well-understood to include burdens that fall short of complete deprivations. *Id.* The *Moore* court concluded, correctly as we see it, "that Second Amendment scrutiny is not exclusively reserved for laws that wholly or effectively prohibit firearm possession." *Id.*; see also *Frein v. Pennsylvania State Police*, 47 F.4th 247, 254 (3d Cir. 2022) (the Second Amendment guarantee, of course, forbids destroying the right, but it also forbids lesser violations that hinder a person's ability to hold on to his guns). Accordingly, we reject defendant's contention that plaintiffs have failed to plead facts showing that the ordinance could infringe upon their right to keep and bear arms.

¶ 41    As to their third argument that plaintiffs fail to state a claim, defendants argue that plaintiffs were required to allege that the ordinance only applies to "the people." The Supreme Court has confirmed that "the people" for purposes of the Second Amendment includes "all Americans." *Bruen*, 597 U.S. at 70 (quoting *Heller*, 554 U.S. at 581). Defendants contend that plaintiffs fail to allege that the ordinance only applies to law-abiding American citizens or other individuals similarly connected to the American community.

¶ 42    The ordinance in this case imposes a tax upon retail purchasers which is on top of all of Illinois' licensing regulations. The applicable federal and state regulations and requirements aim

to ensure that only "the people" are able to legally purchase firearms from retailers. In fact, to lawfully purchase firearms and ammunition in Illinois, people must obtain a license which ensures that they are qualified to possess a firearm or ammunition. 430 ILCS 65/1 (West 2020) ("it is necessary and in the public interest to provide a system of identifying *persons who are not qualified to acquire or possess firearms* [or] firearm ammunition *** within the State of Illinois *** establishing a practical and workable system by which law enforcement authorities will be afforded an opportunity to identify those persons who are prohibited *** from acquiring or possessing firearms and firearm ammunition" (emphasis added)); see also 430 ILCS 65/2(a)(1)–(2), 65/5(a) (West 2020). Defendants are not entitled to dismissal on this basis because all reasonable inferences must be drawn in plaintiffs' favor at this stage (*Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081, ¶ 29) and Illinois law creates the inference that those paying the relevant taxes are "the people" for purposes of the Second Amendment.

¶ 43    *D. Plaintiffs May Be Entitled to Proceed Under Section 1983 of the Civil Rights Act*

¶ 44    Plaintiffs filed a one-count complaint in this case. Their designated cause of action for both themselves and the other putative class members is a civil claim for a deprivation of constitutional rights or, in other words, a violation of 42 U.S.C § 1983. Section 1983 of the Civil Rights Act of 1964 provides that "every person who, under color of any *** ordinance *** subjects *** any citizen of the United States *** to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C § 1983 (West 2020). Defendants argue that plaintiffs' claim under § 1983 fails because that statute cannot be used as a vehicle to obtain damages for the County's taxation ordinances.

¶ 45      Federal courts have long expressed their own need to refrain from interfering with state and local tax systems. See, *e.g.*, *Fair Assessment in Real Estate Association v. McNary*, 454 U.S. 100, 113 (1981). Federal courts acknowledge that principles of federalism and comity typically bar federal interference in the collection of state taxes, which is a local concern. *Id*. at 110-11. The expressions of concern surrounding comity and federalism are not so present in this case because plaintiffs have interposed a § 1983 claim in our state court. Nonetheless, the Supreme Court has likewise cautioned against the use of § 1983 in state court actions as a mechanism for challenging state taxes. See *National Private Truck Council* v. *Oklahoma Tax Commission*, 515 U.S. 582, 589 (1995).

¶ 46      In *National Private Truck*, the supreme court explained that "Congress did not authorize *injunctive or declaratory relief* under § 1983 in state tax cases when there is an adequate remedy at law (emphasis added)." *Id*. at 588; see also *id*. at 594 ("When a litigant seeks *declaratory or injunctive relief against a state tax* pursuant to § 1983, however, state courts, like their federal counterparts, must refrain from granting federal relief under § 1983 when there is an adequate legal remedy" (emphasis added)). However, in *National Private Truck*, the Supreme Court did not in any way address a § 1983 action filed in state court in which the plaintiffs seek only damages. Ignoring the fact that the Supreme Court did not speak to the issue presented here, defendants argue that plaintiffs' claims are foreclosed because plaintiffs did not allege that they lack an adequate state remedy at law.

¶ 47      Even if it is required for plaintiffs to eventually show they lack an adequate remedy other than § 1983 in order to recover (see, *e.g.*, *Harris County Appraisal District v. Braun*, 625 S.W.3d 622, 629 (Tex. App. 2021) (a taxpayer is prohibited from bringing a section 1983 action in a Texas court seeking damages for purportedly unconstitutional taxes assessed by a state entity,

provided the state has provided an adequate remedy under its laws); *Town of Flower Mound v. Stafford Estates. Ltd. Partnership*, 71 S.W.3d 18, 49 (Tex. App. 2002) (collecting cases); see also *Washington Trucking Associations v. State Employment Security Department*, 393 P.3d 761, 773 (Wash. 2017)), at the motion to dismiss stage, we cannot say defendants have clearly demonstrated that plaintiffs' claim is insufficient at law. Indeed, courts in this state have previously explained that "a taxpayer may not contest the validity of a state tax in an action for damages pursuant to section 1983 if *** state law offers an adequate and complete remedy." *Reno v. Newport Twp.* 2018 IL App (2d) 170967, ¶ 27. For a legal remedy to be considered adequate in Illinois, the remedy must be capable of making the plaintiff whole. *Horwitz v. Sonnenschein Nath & Rosenthal*, 2018 IL App (1st) 161909, ¶¶ 35–36.

¶ 48    Defendants have not identified any other possible remedy that plaintiffs could avail themselves of should our courts find that plaintiffs' Second Amendment rights were violated. Plaintiffs point out that there is no tax objection proceeding or other mechanism for challenging the allegedly unconstitutional firearm tax. They contend that there is no way from them to be compensated for their injury other than through the mechanism they have chosen—a § 1983 claim. They assert that "[t]he only thing that can make Plaintiffs whole is a holding that the ordinance is an unconstitutional tax, coupled with the recovery of damages under § 1983." Defendants have not established that they are entitled to dismissal with prejudice because they have not demonstrated that there is no set of facts that could entitle plaintiffs to relief or that they are entitled to dismissal as a matter of law. *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009) ("a cause of action should not be dismissed, pursuant to a section 2–615 motion, unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief."); *Sanders v. Oakbrook Healthcare Center, Ltd.*, 2022 IL App (1st) 221347,

¶ 17 ("A section 2-619(a)(9) motion to dismiss should be granted only where no material facts are in dispute and the movant is entitled to dismissal as a matter of law."). Accordingly, defendants are not entitled to dismissal on the basis of plaintiffs' chosen cause of action.

¶ 49    *E. The Ordinance Imposes a Tax, Not a Fee*

¶ 50    Pointing to a footnote in the Supreme Court's opinion in *Bruen*, defendants argue that they are entitled to dismissal because the ordinance at issue imposes just a minimal fee on firearm purchasers. In the relevant footnote, the Supreme Court stated that background checks and firearm safety course requirements for obtaining a firearm permit are generally compatible with the constitution, but that they may become unconstitutional if they are accompanied by "lengthy wait times in processing license applications or *exorbitant fees* which deny ordinary citizens their right to public carry (emphasis added)." *Bruen*, 597 U.S. at 39 n. 9. Defendants suggest that because the firearm tax here is only $25 per firearm and the ammunition tax is a nickel or a penny per cartridge, the fees are not exorbitant and, therefore, pass constitutional muster. However, the Supreme Court was discussing the issue of fees, not taxes, in that footnote in *Bruen*.

¶ 51    The Firearm and Firearm Ammunition Tax Ordinance cannot be sustained under the Supreme Court's fee jurisprudence. Defendants correctly point out that the Supreme Court has held that the constitution does not necessarily forbid the charge of a "fee" to a person associated with the person exercising a constitutional right. *Cox v. New Hampshire*, 312 U.S. 569, 577 (1941). However, the Supreme Court explained in *Cox* that a such a fee imposed on the exercise of a constitutional right must not be a general revenue tax, but instead must be a fee designed to meet the expense incident to administering the act and the maintenance of public order in the matter licensed. *Id.* As the Second Circuit Court of Appeals has explained of *Cox*'s holding,

"[p]ut another way, imposing fees on the exercise of constitutional rights is permissible when the fees are designed to defray (and do not exceed) the administrative costs of regulating the protected activity (parenthetical in original)." *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013). The taxes imposed by the ordinance here cannot be characterized as a fee as they have no relation to administrative costs inherent in regulating the allegedly protected activity.

¶ 52     The County itself has repeatedly and continuously characterized the costs imposed on a retail purchaser by the ordinance as "a tax," not a fee. The ordinance is called "the Cook County Firearm and Firearm Ammunition Tax Ordinance" (Cook County Code of Ordinances art. XX, § 74-665) and it is located in the chapter of county ordinances for "Taxation" (Cook County Code of Ordinances ch. 74) rather than the chapter for "Fees" (Cook County Code of Ordinances ch. 32). The preamble to the ordinance explains that the County levies the tax under its taxing authority which it explains "authorizes it to impose and collect a tax on the sale of firearms and firearm ammunition within the County of Cook." Cook County Code of Ordinances art. XX, § 74-665, Preamble. More fundamentally, according to the record, the tax imposed here does not have anything to do with the costs associated with a licensing or permit issuing program nor is it in any way designed to defray administrative costs arising from such a program. The Supreme Court and the other federal courts have sanctioned fees pertaining to firearms such as application processing fees, permitting fees, and other charges that are targeted to recoup the costs for administering lawful Second Amendment regulations. The taxes here aim to raise revenue to fund the County's gun violence prevention programs with no connection to the administration of any regulation. The taxes are imposed exclusively for revenue purposes to fund the County's policy objectives and priorities, and the revenue is not used to cover government costs incurred while regulating the act of purchasing a firearm. Accordingly, the tax cannot be countenanced as

a permissible fee that can be assessed to a person in conjunction with that person's exercise of the Second Amendment right. Therefore, the complaint cannot be dismissed on that basis.

¶ 53                              CONCLUSION

¶ 54    Based on the foregoing, we reverse, and we remand the case to the circuit court for further proceedings.

¶ 55    Reversed and remanded.